**Mark WAYNE, et al., Plaintiffs-Appellants,**

v.

**TENNESSEE VALLEY AUTHORITY, et al., Defendants-Appellees.**

No. 83–4043.

United States Court of Appeals, Fifth Circuit.

April 23, 1984.

Thomas W. Reese, St. Petersburg, Fla., for plaintiffs-appellants.

Herbert S. Sanger, Jr., Gen. Counsel, James E. Fox, Associate Gen. Counsel, Brent R. Marquand, Richard B. Campbell, Donna L. Pierce, Tenn. Valley Auth., Knoxville, Tenn., for T.V.A.

Mitchell, McNutt, Bush, Lagrone & Sams, L.F. Sams, Jr., Michael D. Greer, Tupelo, Miss., for defendants-appellees.

Before BROWN, GEE and WILLIAMS, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge:

Plaintiffs appeal from a summary judgment entered in the Northern District of Mississippi holding that their claims are barred by the Tennessee statute of limitations applicable to product liability actions, Tenn. Code Ann. §§ 29-28-103 *et seq.* (1980). The Tennessee statute is a statute of repose which imposes an absolute bar to actions brought more than ten years after the allegedly defective product was purchased. Appellants seek to have a federal statute of limitations, 28 U.S.C. § 2401(b), or a Mississippi statute of limitations, either Miss. Code Ann. § 15-1-49 or § 75-2-725, applied instead. Those statutes start the period of limitations running at the time the injury was, or should have been, discovered; under those statutes the Waynes' action would be timely.

## I. FACTS

In 1968, Mark and Phoebe Wayne began construction of a house on their 247-acre cattle farm in Hardin County, Tennessee. To save money, they acted as their own general contractor. On the advice of their block mason, in October 1968, the Waynes purchased concrete blocks filled with phosphate slag to use in the construction of the basement. The Waynes purchased the blocks from W & W Builders of Counce, Tennessee, but the blocks were manufactured by appellee Tupelo Concrete Products Company of Tupelo, Mississippi (Tupelo), using phosphate slag produced and sold as a by-product of appellee Tennessee Valley Authority's (TVA) Muscle Shoals fertilizer plant.

In 1969, the Waynes and their two minor children moved into the completed house and lived there without knowledge of any possible structural hazard until January 24, 1979. On that date an article in a Memphis, Tennessee, newspaper alerted them to the fact that phosphate slag contains uranium and its various decay products, such as radon gas, which give off potentially harmful radiation.[1] The Waynes then contacted the Intergovernmental Phosphate Slag Task Force (the Task Force), an interagency task force composed of TVA, the

---

**1.** Extended inhalation of radon gas is believed to cause lung cancer.

Environmental Protection Agency, the State of Tennessee, and several other states, which was conducting tests on houses in the area. The Waynes asked the Task Force to test monitor the radiation levels in their house. The Task Force tested their house and recorded an average radiation level higher than any of the twenty-nine other houses tested in a multi-state area. In September 1979, the Waynes followed the advice of Tennessee Public Health Department and United States Environmental Protection Agency (EPA) officials and moved out of their house. The value of the Wayne's house dropped from approximately $95,000 to virtually nothing.

Relying on implied warranty, negligence, and strict liability theories, the Waynes filed suit against Tupelo and TVA in federal court in the Northern District of Mississippi, Eastern Division. The suit was filed in January 1981, over eleven years after the concrete blocks were purchased. The Waynes requested over fourteen million dollars in damages to compensate them for past, present, and future physical pain and suffering, mental anguish, medical expenses, and loss of the use and enjoyment of their house. The Wayne's minor children were originally named as plaintiffs, but at their own request their claims were dismissed without prejudice.[2] In December 1982, the district court granted defendants' motions for summary judgment and dismissed Mr. and Mrs. Wayne's claims as barred by Tennessee's ten year statute of repose for product liability actions. The Waynes appeal from that judgment.

## II. MATERIAL ISSUES OF FACT?

In their initial complaint the Waynes alleged that TVA fraudulently withheld knowledge of the hazardous radioactive nature of phosphate slag and slag-filled concrete blocks. Appellants now contend that there is no record evidence disproving that TVA withheld the critical information. As a result it is urged that whether TVA with-

held information is a genuinely disputed issue of material fact making summary judgment improper. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970). Although TVA had the burden of proving there was no genuine issue, *see ibid.*, it met that burden as to fraudulent concealment of knowledge by submitting the affidavit of Ronald B. Maxwell, an employee of TVA's Office of Health and Safety who had been employed in the health physics area since 1965. The relevant portion of the affidavit reads as follows:

3. Early on the only potential hazard perceived by TVA and others in the health physics field from this type of material was direct radiation exposure. TVA conducted investigations from 1962 to 1965 on the amount of direct gamma external radiation from slag and found levels only slightly above natural background radiation. Based on those investigations direct radiation was not considered to be a significant hazard especially since concrete blocks contain only a small proportion of slag. At that time the state of the art had not identified radon gas as a potential health concern in connection with phosphate and phosphate by-product materials. Since there was no reason to suppose that there might be a health hazard from radon, no evaluation of the radiological implications of radon gas emitted by phosphate slag was performed.

4. Not until the latter half of the 1970s was more knowledge gained about potential radon hazards from uranium mine studies and research. In February 1979 EPA released a report on the radon levels in structures built over phosphate mined areas in Florida (EPA 520/4–78–013).

5. In reaction to draft versions of EPA's report, in December 1978, TVA no longer made slag available as a precau-

---

**2.** All parties agreed that the children have until one year after they reach majority to sue on their own behalf.

tionary measure until further studies could be done.

In December 1978, TVA made public a news release stating that because phosphate slag was radioactive the sale of phosphate slag was being stopped until federal guidelines on the use of the slag were published. The news release indicated that the slag had been used by manufacturers of concrete blocks since the mid-1950's.

 Appellants submitted no evidence to counter the Maxwell affidavit. Rather, they relied solely on the unsupported allegations in their complaint. Even considering the affidavit in the light most favorable to the Waynes, it indicates that TVA did not know or have reason to know of the danger of radon gas in 1969, when the blocks at issue were sold, and did not know or have reason to know of such a danger until near the end of the 1970's, when TVA stopped the sale of phosphate slag and told the public why it was doing so. There was thus no genuine fact question raised as to whether TVA had fraudulently withheld knowledge of the dangers of phosphate slag. A party may not prevail on the bare allegations of his complaint when there is a properly supported summary judgment motion made against him. *First National Bank v. Cities Service Co.*, 391 U.S. 253, 289, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968). The district court acted properly in granting the summary judgment as to the issue of fraudulent concealment by TVA because no genuine material fact issue was presented.

### III. FEDERAL STATUTE OF LIMITATIONS

A. *Review on Appeal of Matters Not Presented in the Trial Court.*

As to the claims against Tupelo and TVA based upon product liability and negligence, the district court granted summary judgment based upon the Tennessee ten year statute of repose. Appellants argue that the applicable statute of limitations in its action against TVA is the federal statute set out in 28 U.S.C. § 2401(b), and not the Tennessee statute. Appellees contend

that we should not address this issue because the application of federal limitations was not raised in the trial court. Whether the ten year Tennessee statute of repose was the proper statute was, however, squarely before the court since appellees asserted the Tennessee statute as an affirmative defense. Since appellees had the burden of asserting the proper statute and there was an issue as to the proper statute, the fact that appellants at trial claimed only the applicability of the Mississippi statute and not the federal statute does not control. The issue of what statute of limitations applies was properly raised and is before us. Because this case was decided in the trial court on the issue of the proper statute of limitations, it is proper to consider whether the federal limitations statute should be applicable.

28 U.S.C. § 2401(b) provides:

(b) A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency *within two years after such claim accrues* or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented.

(Emphasis added.)

Because TVA is a federally owned corporation which is an agency or instrumentality of the United States, *Painter v. Tennessee Valley Authority*, 476 F.2d 943, 944 (5th Cir.1973), appellants contend that their action is a tort claim against the United States and that they had two years from the date their claim "accrued" to file suit. They rely on *Quinton v. United States*, 304 F.2d 234, 240 (5th Cir.1962), to support the proposition that under the federal statute a claim does not accrue until it was, or should have been, discovered. Since we find, however, that § 2401(b) is not applicable to a suit against TVA, we need not decide when the Waynes' suit would have accrued under its provisions.

B. *Applicability of § 2401(b).*

In 1948, the Judicial Code of 1911 was revised. As part of that revision, 28 U.S.C. §§ 41(20) and 942 (1940) were consolidated to create a new section, § 28 U.S.C. § 2401. Thus the two year statute of limitations contained in § 420 of the Federal Tort Claims Act (FTCA), 60 Stat. 842 *et seq.* (1946), was removed from its place in the codification of that act, 28 U.S.C. § 942, to the new and separate § 2401.

Appellants argue that when the revisers moved § 942 from the context of the Federal Tort Claims Act and incorporated it into § 2401(b), they intended that thereafter it would apply generally to *all* tort claims against the United States, including those against TVA. The assertion must fail, however. The original limitations section of the FTCA, § 420, was immediately followed by § 421, exempted the TVA entirely from the FTCA. Removing the limitations section to § 2401 did not change the law. The revisers stated: "[s]ubsection (b) of the revised section simplifies and relates said section 942.... *without change of substance.*" (Emphasis added.) We note that the Court of Appeals of the Sixth Circuit has reached the same conclusion in *Stevens v. Tennessee Valley Authority,* 712 F.2d 1047, 1051 (6th Cir.1983). Because the revision was not intended to change the law it is clear that § 2401(b) was not intended to create a new statute of limitations for TVA. We must therefore look to another source for the applicable statute of limitations.

## IV. FORMULATION OF FEDERAL COMMON LAW

### A. *Federal Question Jurisdiction.*

■ Appellants point out that the district court's jurisdiction over this action against TVA was not based upon 28 U.S.C. § 1332 (diversity of citizenship), as was the case against Tupelo, but upon 28 U.S.C. §§ 1331[3] and 1337[4] (federal question, and actions arising under an Act of Congress regulating commerce). Appellants therefore argue that this Court is not bound to apply state limitations law. While it is true that a claim against a wholly owned federal corporation created under an Act of Congress, such as TVA, falls within the general grant of federal question jurisdiction found in § 1331, *Jackson v. Tennessee Valley Authority,* 462 F.Supp. 45, 50 (M.D. Tenn.1978), *aff'd,* 595 F.2d 1120 (6th Cir. 1979), that does not of itself settle the choice of law question. *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), and its progeny require:

> (1) that federal law apply in areas of exclusive federal competence, (2) that state law apply in areas of exclusive state competence, and (3) that state law apply in areas of concurrent federal-state competence unless (a) federal legislation or regulation directly addresses the precise and narrow issue of dispute or (b) the application of federal law is required to protect or to effectuate a valid and substantial federal interest or policy. When, as in this case, extensive federal legislation and regulation exist in the area but do not directly address the precise and narrow issue of litigation, the pertinent analysis assesses whether there exists a valid and substantial federal interest or policy that requires the application of federal law as an exercise of interstitial lawmaking to protect or to effectuate the federal scheme. When no such federal interest or policy exists, *Erie* requires that state law apply.

*First Southern Federal Savings & Loan Association v. First Southern Savings & Loan Association,* 614 F.2d 71, 73 (5th Cir.1980).

It has long been established that TVA has the capability of suing and being sued in its own name. *See* 16 U.S.C. § 831c(b).

---

3. 28 U.S.C. § 1331(a) provides that "[t]he district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and arises under the Constitution, laws, or treaties of the United States."

4. 28 U.S.C. § 1337 provides that "[t]he district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies."

The Act which created the TVA, however, did not create an entire new body of procedural law regulating suits against TVA. Rather the applicable procedural rules and statutes of limitations have been determined by the nature of the cause of action alleged, not the fact that TVA was the defendant in the case. *See, e.g., Stevens v. Tennessee Valley Authority*, 712 F.2d 1047, 1056 (6th Cir.1983) (claim against TVA based on Veterans Preference Act governed by laches since Congress had specified there would be no statute of limitations in the most analogous federal cause of action); *Ray v. Tennessee Valley Authority*, 677 F.2d 818, 822 (11th Cir.1982) *cert. denied*, 459 U.S. 1147, 103 S.Ct. 788, 74 L.Ed.2d 994 (1983) (claim against TVA based on Veterans Preference Act governed by analogous state statute of limitations for injuries to the person or rights of another arising from contract); *Harris v. Tennessee Valley Authority*, 507 F.Supp. 318, 320 (E.D.Tenn.1980) (action against TVA for failure to inform new employee of results of physical examination governed by Tennessee statute of limitations, Tenn. Code Ann. § 28–304).

■ Even if an action against TVA was an area of exclusive federal competence, it is evident as discussed above that there is no federal statute of limitations uniformly applicable to such a suit. The involvement of TVA arguably takes such a suit out of the area of exclusive state competence, so that this action involving a federally owned corporation and claims of negligence and product liability falls into an area of concurrent federal-state competence. Since no federal legislation or regulation directly addresses the issue of the proper limitation on suits, a state statute of limitations is ordinarily applied unless the application of federal law is required to further a substantial and valid federal interest or policy. *First Southern Federal Savings & Loan Association*, 614 F.2d at 73.

B. *Federal Common Law.*

Appellants contend that there are overriding federal interests in promoting the safe handling and disposal of radioactive hazardous waste, and dealing uniformly with the "thousands of citizens who unknowingly have purchased radioactive health hazards." They therefore suggest, as an alternative in the event that this Court determines that § 2401 is not now applicable, that this Court should fashion a federal common law rule of decision declaring that suits against the TVA are subject to the provisions and limitations of § 2401.

■ Federal rules of common law are seldom fashioned since federal courts are not common-law courts which possess a general power to develop and refine their own rules of decision. Rather, the direction of national policy by enacting a rule displacing state law is generally, and purposely, reserved to the legislative branch of the government. *City of Milwaukee v. Illinois and Michigan*, 451 U.S. 304, 312–13, 101 S.Ct. 1784, 1789–90, 68 L.Ed.2d 114 (1981); *Tennessee Valley Authority v. Hill*, 437 U.S. 153, 195, 98 S.Ct. 2279, 2302, 57 L.Ed.2d 117 (1978). When Congress has legislated on the subject, the legislation, and not federal common law, will be deferred to. *City of Milwaukee*, 451 U.S. at 316, 101 S.Ct. at 1792. That Congress could readily enact a complete code governing the subject matter is by no means enough to justify a federal court fashioning a common law rule. *Wallis v. Pan American Petroleum Corp.*, 384 U.S. 63, 68, 86 S.Ct. 1301, 1304, 16 L.Ed.2d 369 (1966). As the Supreme Court stated, "[i]n deciding whether rules of federal common law should be fashioned, normally the guiding principle is that a significant conflict between some federal policy or interest and the use of state law ... must first be specifically shown." *Ibid.*

■ Federal common law is developed when it must answer uniquely federal problems. *Carlson v. Green*, 446 U.S. 14, 24, 100 S.Ct. 1468, 1474, 64 L.Ed.2d 15 (1980) (uniform federal rule of survivorship in *Bivens* actions); *Illinois v. City of Milwaukee*, 406 U.S. 91, 92 S.Ct. 1385, 31 L.Ed.2d 712 (1972) (federal rule to abate pollution of interstate waters); *Clearfield Trust Co. v. United States*, 318 U.S. 363, 63 S.Ct.

573, 87 L.Ed. 838 (1943) (federal rule governing commercial paper issued by the United States). Appellants argue that the regulation of radioactive phosphate slag is a uniquely federal problem, and that the area is ripe for the development of federal common law. We note that there is a fundamental difference between determining, for example, allowable levels of radioactive emissions and determining allowable time periods within which suit may be brought. Even Congress has historically been reluctant to provide federal statutes of limitations for causes of action it has itself created. *Stevens v. Tennessee Valley Authority*, 712 F.2d 1047, 1053 (6th Cir.1983). In the cases mentioned above the Supreme Court found the need to create a narrow substantive common law. They did not create federal common law limitations periods.

Federal regulation may well be the only effective way to prevent the pollution of one state's environment by another state's interstate shipment or sale of radioactive materials. *Cf. Illinois v. City of Milwaukee*, 406 U.S. 91, 92 S.Ct. 1385, 31 L.Ed.2d 712 (1972). Congress is obviously aware of the situation, however, for in a 1980 amendment to the Resource Conservation and Recovery Act it directed the EPA to delay regulating phosphate slag until six months after a study of the need for such regulation had been made. 42 U.S.C. § 6921(b)(3)(A). Such a study is currently underway. In the absence of comprehensive federal regulation of the use of phosphate slag, however, there is no uniquely federal need to regulate the *time* for enforcing rights which are currently governed by state law.[5]

Appellants argue that there is also a compelling federal interest in establishing a uniform time in which actions may be commenced against TVA, "an action which would be consistent with the clear Congressional intent to have all federal agencies subject to one uniform statute of limita-

tions." Unfortunately for appellants, it is clear that Congress does *not* intend all federal agencies to be subject to one uniform statute of limitations. If it did, it would not have excluded the TVA from the reach of 28 U.S.C. § 2401. *See* section III B, *supra.*

■ Because we do not find any significant conflict between federal policy and the use of state statutes of limitations in suits on this issue against the TVA, and because we find it would be contrary to Congressional intent, we decline to establish a federal common law rule that suits against TVA are subject to the provisions and limitations of 28 U.S.C. § 2401.

## V. CHOICE OF LAWS

### A. *Which State Limitations Statute?*

Having concluded that there is no federal statute of limitations or federal unwritten limitations period applicable to this action against TVA, we next consider what state law is applicable. Appellants concede that *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), and *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941), require that in suits governed by state law a federal court apply the choice of law rules of the forum state. Since this suit was brought in Mississippi, we must look to its choice of law rules.

As the district court noted, since 1968, Mississippi has followed the principles summarized in the Restatement (Second) of Conflict of Laws (the Restatement). *Mitchell v. Craft*, 211 So.2d 509 (Miss. 1968). In short the Restatement provides:

> Ordinarily, the local law of the state where the injury occurred will determine the rights and liabilities of the parties, *"unless* with respect to the particular issue, some other state has a more significant relationship to the occurrence and the parties, in which event the local law of the other state will be applied."

---

**5.** We do not mean to imply that, if there were comprehensive federal standards, we would find such a need.

*Mitchell* at 516 (summarizing and quoting the Restatement). Other factors the court should consider include which state's law will best advance the forum's and other interested states' interests, which state law is the better rule of law, and which state's law will protect the justified expectations of the parties. *Id., passim.*

The district court did not discuss specifically every factor listed in *Mitchell,* and appellants claim that this necessitates a reversal and remand of this case. The district court did, however, discuss in detail its reasoning in applying Tennessee law. It found in part that:

> There is no doubt that the Tennessee contacts predominate in the present cause of action. Plaintiffs are Tennessee residents. The concrete blocks were purchased for and incorporated into their Hardin County, Tennessee, home. The particular blocks at issue were purchased through a Tennessee homebuilding supply business and delivered directly to plaintiffs' Tennessee homesite according to Mark Wayne. Plaintiffs lived continuously with the radioactive emissions for ten years and, therefore, any injuries inflicted and damages sustained were based in Tennessee. The only important non-Tennessee contacts are TVA's residence and production of the phosphate slag in Alabama and TCP's residence and manufacturing of the concrete blocks in Mississippi....

> . . . .

> ... Though TCP's manufacturing of the blocks in Mississippi creates a substantial contact, the court has chosen to afford this contact less than its customary weight because there is no evidence that TCP altered in any manner the radioactive quality of the phosphate slag. In other words, the evidence in the record indicates that TVA's Alabama contact (manufacturing the slag) was certainly more significant than TCP's Mississippi contacts.

■ After adding into the balance the additional factors listed in § 6 of the Restatement, we conclude that they would not in any way tilt the scales toward application of Mississippi law. Of the three interested states, Tennessee has the strongest interest in having its laws applied since it was the domicile of the injured parties and any injury occurred there. Although appellants argue that Mississippi's statute of limitations is clearly the better law in that it runs from the time of discovery of a cause of action, instead of from the time of purchase of a product later giving rise to a cause of action, there are sound reasons (noted in Section VI A *infra*) in favor of each policy for determining when limitations begin to run. Neither one may be decisively declared the "better" law. Finally, it has not been shown that there was any justifiable expectation by any party to this action, let alone the Waynes, that Mississippi rather than Tennessee law would apply. We find that the district court's decision that Tennessee's substantive law should be applied was correct in light of the predominance of Tennessee's contacts with, and interests in, this action.

B. *Substantive Nature of Tennessee's Statute of Limitations.*

The district court concluded that the statute of limitations set out in Tennessee's Products Liability Act of 1978 (TPLA), Tenn.Code Ann. § 29–28–101 *et seq.* (1980), is substantive rather than procedural, and applied it to bar the appellants' cause of action.

As the district court observed:

> Statutes of limitation, though they can have a material effect on the outcome of a case, are usually characterized as procedural. Accordingly, the forum's own statute of limitation is usually applied even though the choice of law analysis dictates that a foreign jurisdiction's substantive law be applied. However, Mississippi recognizes a widespread exception that treats the foreign statute of limitation as substantive if it terminates the very cause of action itself. *See Davis v. Mills,* 194 U.S. 451 [24 S.Ct. 692, 48 L.Ed. 1067] (1904) ("barring the right, not merely the remedy"). Cases in which this exception has been applied

include *Ramsay v. Boeing Co.*, 432 F.2d 592 (5th Cir.1970), and *Cummings v. Cowan*, 390 F.Supp. 1251 (N.D.Miss. 1975). When deciding whether a foreign limitations statute is indeed "substantive" and, therefore, an exception to the general rule, the Mississippi court is bound by the constructions placed on the foreign statute of limitation by the courts of that jurisdiction.

Section 2 of the TPLA defines a product liability action as follows:

"Product liability action" for purposes of this chapter shall include all actions brought for or on account of personal injury, death or property damage caused by or resulting from the manufacture, construction, design, formula, preparation, assembly, testing, service, warning, instruction, marketing, packaging or labeling of any product. It shall include, but not be limited to, all actions based upon the following theories: strict liability in tort; negligence; breach of warranty, express or implied; breach of or failure to discharge a duty to warn or instruct, whether negligent, or innocent; misrepresentation, concealment, or nondisclosure, whether negligent, or innocent; or under any other substantive legal theory in tort or contract whatsoever.

Tenn.Code Ann. § 29–28–102(6) (1980).

Section 3(a) of the TPLA further provides:

Any action against a manufacturer or seller of a product for injury to person or property caused by its defective or unreasonably dangerous condition must be brought within the period fixed by §§ 28–3–104, 28–3–105, 28–3–202 and 47–2–725, but notwithstanding any exceptions to these provisions *it must be brought within six (6) years of the date of injury, in any event, the action must be brought within ten (10) years from the date on which the product was first*

*purchased for use or consumption,* or within (1) year ... after attaining the age of majority, whichever occurs sooner.

Tenn.Code Ann. § 29–28–103(a) (1980) (emphasis added).

Tennessee's statute obviously terminates the very cause of action a maximum of ten years from the time of purchase or one year after the plaintiff attains the age of majority.[6] In *Buckner v. GAF Corp.*, 495 F.Supp. 351, 355 (E.D.Tenn.1979), *aff'd*, 659 F.2d 1080 (6th Cir.1981), the court explained:

TCA § 23–3703 is not a conventional statute of limitations. It imposes an outer limit or ceiling upon the existing statute of limitations relating to actions for personal injuries, § 28–304. The "ceiling" imposed in § 23–3703 dates from "the date on which the product was first purchased for use or consumption." In construing similar statutes of limitations, the Tennessee Supreme Court has recognized that once the period of time provided by such ceiling has expired, actions brought after that period of time are *barred*. This is so even when the occurrence giving rise to the cause of action, or the injury happens, or is discovered, after the ceiling period.

(Citations omitted).

In recent years many states have enacted such statutes.[7] They have been labeled "statutes of repose" in order to distinguish them from ordinary statutes of limitations which usually set much shorter time periods which run from the time the cause of action accrues, rather than from an arbitrary time such as the date of purchase. F. McGovern, *The Variety, Policy and Constitutionality of Product Liability Statutes of Repose*, 30 Am.U.L.Rev. 579, 584 (1981). Because the date of injury is not a factor used in computing the running

**6.** *See Tate v. Eli Lilly & Co.*, 522 F.Supp. 1048, 1051 (M.D.Tenn.1981) (construing the words "whichever occurs sooner" as a nullity).

**7.** In 1981 there were reported to be ninety-eight statutes in forty-eight states that could be considered statutes of repose. F. McGovern, *The Variety, Policy and Constitutionality of Product Liability Statutes of Repose,* 30 Am.U.L.Rev. 579, 580 (1981).

of the time period, and such statutes typically do not have tolling provisions, the statutes acquire a substantive nature, barring rights of action even before injury has occurred if the injury occurs subsequent to the prescribed time period.

Appellants argue that a statute of limitations extinguishes a substantive right only when the right was created by a statute and was not known at common law. The theory upon which appellants rely is that the legislature which creates, for example, an action for wrongful death[8] may as a condition precedent to accrual of a cause of action require that suit be brought within the prescribed statutory period. Since the action was created by a statute which limited it, the time limit serves to bar not merely the remedy, but the right. If the right which is being sued upon was known at common law, however, it is argued that a statute of limitations may not take away, or bar, that right. All that it may do is prevent the plaintiff from recovering. Since tort actions for negligence, misrepresentation, and strict liability were known at common law, appellants urge that the TPLA cannot bar the appellants' right, but merely their remedy; and since a statute of limitations is substantive only if it bars the right itself, they urge that the TPLA limitation is procedural and should not be applied in this case.

Although appellants rely on cases such as *Davis v. Mills*, 194 U.S. 451, 453, 24 S.Ct. 692, 693, 48 L.Ed. 1067 (1904); *Ramsay v. Boeing Co.*, 432 F.2d 592, 597 (5th Cir.1970); and *Kozan v. Comstock*, 270 F.2d 839, 841 (5th Cir.1959), as support for their argument, those cases do not state that statutes of limitations can bar only rights not known at common law. Rather, they discuss the effects of two different categories of statutes of limitations: those that apply to whole classes of actions, such as all tort actions; and those that apply to specific causes of action, and were created by the same statutes which created those causes of action.

■ Appellants' convoluted reasoning is flawed in that it assumes that legislatures are precluded from altering or eliminating common law causes of action. Such is not the law. Legislatures can change common law rights just as they can create new rights. In *Duke Power Co. v. Carolina Environmental Study Group*, 438 U.S. 59, 89 n. 32, 98 S.Ct. 2620, 2638 n. 32, 57 L.Ed.2d 595 (1978) (citations omitted), the Supreme Court wrote:

> Our cases have clearly established that "[a] person has no property, no vested interest, in any rule of the common law." The "Constitution does not forbid the creation of new rights, or the abolition of old ones recognized by the common law, to attain a permissible legislative object," despite the fact that "otherwise settled expectations" may be upset thereby. Indeed, statutes limiting liability are relatively commonplace and have consistently been enforced by the courts.

Because the requirements of the TPLA statute of repose must be met before a cause of action under the TPLA can be established, we affirm the district court's finding that the statutory requirement is substantive. It was properly applied in the Mississippi federal court as the controlling law. It bars appellants' suit. *See also Hines v. Tenneco Chemicals, Inc.*, 728 F.2d 729, at 730 (5th Cir.1984) (North Carolina statute of repose treated as substantive in choice of laws context).

## VI. CONSTITUTIONAL OBJECTIONS TO THE STATUTE OF REPOSE

The TPLA statute of limitations' absolute ten year bar is subject to several exceptions, one of which states that "the foregoing limitation of actions shall not apply to any action resulting from exposure to asbestos." Tenn.Code Ann. § 29–28–103(b) (1980). Appellants argue that because the harms resulting from exposure

---

**8.** There was no action for wrongful death at common law. *See Kozan v. Comstock*, 270 F.2d 839, 841 n. 5 (5th Cir.1959).

to asbestos and phosphate slag are similar in nature, the TPLA violates the Equal Protection Clause of the Fourteenth Amendment by arbitrarily and capriciously distinguishing between asbestos-related claims and phosphate slag-related claims. They contend that the right of access to the courts is a fundamental right so that a classification permitting some plaintiffs shorter time periods in which to sue must be justified by a compelling state interest.

Appellants thus mix together equal protection and due process claims. The argument that a distinction between asbestos-related claims and phosphate slag-related claims is not justified is clearly an equal protection claim because it turns upon the justifiability of a classification made by the state. The argument that a state may not curtail access to the courts without a compelling reason for doing so is a due process claim, because it turns upon the state's power to deprive tort claimants indiscriminately, after a certain period of time, of their alleged property interest in access to the courts.

### A. Due Process.

If appellants' due process argument were valid, every filing fee and filing deadline, as well as every statute of limitations, would have to be justified by a compelling state interest since failure to comply with them would result in a restriction on a plaintiff's access to the courts. There is no absolute right of access to the courts. All that is required is a *reasonable* right of access to the courts—a reasonable opportunity to be heard. *Boddie v. Connecticut*, 401 U.S. 371, 378, 383, 91 S.Ct. 780, 786, 788, 28 L.Ed.2d 113 (1971).[9] When an Act has an economic purpose, limitations created by it must be upheld unless they are irrational and arbitrary. In *Duke Power Co.*, 438 U.S. at 84–85, 98 S.Ct. at 2636–37 (citations omitted), the Supreme Court wrote:

> The liability-limitation provision thus emerges as a classic example of an economic regulation—a legislative effort to structure and accomodate "the burdens and benefits of economic life." "It is by now well established that [such] legislative Acts ... come to the Court with a presumption of constitutionality, and that the burden is on one complaining of a due process violation to establish that the legislature has acted in an arbitrary and irrational way." That the accomodation struck may have profound and far-reaching consequences, contrary to appellees' suggestion, provides all the more reason for this Court to defer to the congressional judgment unless it is demonstrably arbitrary or irrational.

The purpose of the TPLA is found in its preamble:

> WHEREAS ... it is necessary to protect the public interest by enacting measures designed to make product liability insurance more readily available at a reasonable cost so that product cost may be lessened to the consumer; and
>
> WHEREAS, In enacting this act, it is the purpose of the General Assembly to

---

**9.** Before a "compelling interest" standard of strict scrutiny is applied, the right that plaintiffs seek to vindicate by access to the courts must be a fundamental right. Thus in *Boddie v. Connecticut*, 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971), the Supreme Court held that Connecticut's substantial interest in allocating scarce judicial resources was rationally related to its scheme of filing fees, but was not sufficient to override plaintiffs' fundamental interest in access to the only avenue permitted by state law for dissolving their marriage. *Id.* at 381, 91 S.Ct. at 788. In *United States v. Kras*, 409 U.S. 434, 93 S.Ct. 631, 34 L.Ed.2d 626 (1973), the Court observed that Kras' interest in being discharged of his debts in a bankruptcy proceeding did "not rise to the same constitutional level" as one's interest in being able to dissolve one's marriage through the only legal avenue, the courts. *Id.* at 446, 93 S.Ct. at 638. The Court therefore refused to require a compelling state interest as justification for the state's bankruptcy filing fee. In *Ortwein v. Schwab*, 410 U.S. 656, 660, 93 S.Ct. 1172, 1174, 35 L.Ed.2d 572 (1973), the Court noted that the interest in increased welfare benefits, like the interest in a bankruptcy discharge, "has far less constitutional significance than the interest of the *Boddie* appellants." Because the litigation was in the area of economics and social welfare, and no suspect classification was present, the standard applied by the Court was that of rational justification. *Id.* at 661, 93 S.Ct. at 1175.

provide a reasonable time within which action may be commenced against manufacturers, and/or sellers while limiting the time to a specific period of time for which product liability insurance premiums can be reasonably and accurately calculated; and to provide other changes to expedite early evaluation and settlement of claims....

Tenn.Code Ann. § 29–28–103.

■ Limiting the time within which actions may be brought has in numerous cases been held to be a rational, non-arbitrary means of achieving economic ends. *See, e.g., Mathis v. Eli Lilly & Co.,* 719 F.2d 134, 141 (6th Cir.1983); *Buckner v. GAF Corp.,* 495 F.Supp. 351, 353 (E.D. Tenn.1979), *aff'd,* 659 F.2d 1080 (6th Cir. 1981); *Harmon v. Angus R. Jessup Association,* 619 S.W.2d 522, 524 (Tenn.1981); *Harrison v. Schrader,* 569 S.W.2d 822, 827–28 (Tenn.1978). We therefore cannot find that the TPLA statute of repose denies appellants due process of law. *See also Mathis v. Eli Lilly and Co.,* 719 F.2d 134, 141 (6th Cir.1983) (applying an "arbitrary and capricious" standard and finding that the TPLA does not violate Due Process or "public policy").

B. *Equal Protection of the Laws.*

■ In determining whether Tennessee violated the Equal Protection Clause of the Fourteenth Amendment by allowing claimants alleging asbestos-related injuries a longer time to bring an action than claimants alleging phosphate slag-related injuries, we note, first, that people alleging phosphate slag-related injuries do not compose a suspect class. *See Frontiero v. Richardson,* 411 U.S. 677, 683, 93 S.Ct. 1764, 1768, 36 L.Ed.2d 583 (1973). Therefore the standard to be applied is whether the distinction between plaintiffs alleging asbestos-related injuries and phosphate slag-related injuries is rationally related to a legitimate government interest. *United States Department of Agriculture v. Moreno,* 413 U.S. 528, 534, 93 S.Ct. 2821, 2825, 37 L.Ed.2d 782 (1973). We find unconvincing appellants' argument that "there is absolutely no rational basis for exempting asbestos-related injuries from the ten year absolute bar for bringing a products liability claim and not exempting other long term continuing type injuries such as injuries resulting from exposure to low level radiation." The fact that asbestos is regulated as a hazardous air pollutant with prescribed emission and disposal standards, *see* 40 C.F.R. § 61.20–.22, while phosphate slag is expressly listed as a nonhazardous waste by the Environmental Protection Agency, *see* 40 C.F.R. § 261.4(b)(7), is one obvious justification for distinguishing between asbestos-related and phosphate slag-related claims.

The court in *Hargraves v. Brackett Stripping Machine Co.,* 317 F.Supp. 676, 683 (E.D.Tenn.1970), neatly summarized the proper analysis to be applied in a case such as this.

A statute of limitations must be judged in the light of the broad class of cases to which it applies and if it is reasonable with respect to the class, it will not be judged unreasonable merely because it is deemed to operate harshly in a particular or exceptional instance. In reaching this conclusion it should be emphasized that the role of the Court is not to pass upon the wisdom or lack of wisdom of the legislation involved. The courts do not sit to review the wisdom of legislation or regulation by public bodies, for these matters address themselves solely to the legislative or regulating body.

(Citations omitted).

The Court recognizes and regrets appellants' losses. But the very purpose of a statute of repose is to create a settled time when such losses can no longer be subject to claims. Ample authority establishes a governmental right to do this even though harsh results can occur under any such arbitrary time limit. Because we find that the Tennessee statute of limitations was properly selected as the applicable statute of limitations in this case, and because it does not violate appellants' Due Process and Equal Protection rights, the district court should be affirmed in all respects.

AFFIRMED.