John E. **FELDT** & Carol J. **Feldt**

v.

**STURM, RUGER & CO.**

**Civ. No. B–88–389 (JAC).**

United States District Court,
D. Connecticut.

Aug. 23, 1989.

Dominick C. Esposito, Jr., Zeldes, Needle & Cooper, Bridgeport, Conn., for plaintiffs.

David S. Maclay, Arthur Laske, Marsh, Day & Calhoun, Hartford, Conn., for defendant.

## RULING ON PENDING MOTIONS

JOSÉ A. CABRANES, District Judge:

The question presented by the pending motions is whether Georgia or Connecticut law will be applied in this action grounded on diversity jurisdiction. That question requires that we examine, among other things, the principles that currently govern conflict of laws in Connecticut.

Plaintiffs allege that John Feldt was injured on February 27, 1987 when a .22 caliber revolver manufactured and sold by defendant Sturm, Ruger & Co. ("Sturm") discharged when it slipped from its holster. Plaintiff John Feldt seeks damages under a strict products liability theory, and plaintiff Carol Feldt, his wife, seeks damages for loss of consortium. Defendant asserts the affirmative defenses that John Feldt's claim is time barred under Georgia and Connecticut statutory law and also asserts special defenses that plaintiff's injuries were caused by plaintiff's misuse of the product or his own conduct.

Defendant seeks summary judgment on John Feldt's products liability claim [1] on the grounds that Georgia substantive law applies to this case and that Georgia law does not permit a strict tort liability recovery under the circumstances of this case. In response, plaintiffs seek a determination by the court that Connecticut substantive law and/or its statute of limitations applies in this case. Plaintiffs also have filed a cross motion for summary judgment as to defendant's affirmative defenses.

For the reasons stated below and on the basis of the full record of this case, the court determines that Georgia law applies to this case and bars John Feldt's products liability claim.

## BACKGROUND

Plaintiffs are residents of Georgia, and the alleged accident in which John Feldt was injured occurred in Georgia. Sturm is a Delaware corporation with its principal place of business in Southport, Connecticut. The handgun in question was manufactured by the defendant in Connecticut on August 31, 1967 and thereafter was shipped by Sturm to Faber Brothers, Inc., a distributor, in Illinois. The gun was received by Marshall Field & Co. in Chicago, Illinois on October 20, 1967. On December 20, 1967, the gun was resold by Marshall Field & Co. to Gunnard P. Feldt, who shortly thereafter gave the gun to his son, plaintiff John Feldt. John Feldt subsequently took the gun to Georgia.

## DISCUSSION

Plaintiffs urge that the substantive law of Connecticut should apply to this case under Connecticut's recent trend of "modernizing" its choice of law doctrine. In the alternative, plaintiffs argue that even if Connecticut's substantive law does not apply, the procedural law of Connecticut (including Connecticut's statute of limitations) should apply and would not bar plaintiff's claims. Finally, plaintiffs urge that they should be permitted to amend the complaint pursuant to Fed.R.Civ.P. 15 to allege negligence and breach of warranty under Georgia law if the court finds that Georgia substantive law and the Georgia statute of repose apply and that the products liability action is barred.

In a case grounded on diversity jurisdiction, a court of the United States must look to the law of the forum state for the rules governing the choice of law. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Connecticut has not abandoned the traditional *lex loci delicti* rule for choice of law questions in tort cases, and this court declines to give procrustean treatment to the ruling of the Connecticut Supreme Court in *O'Connor v. O'Connor*, 201 Conn. 632, 519 A.2d 13 (1986), in which the Court refused to apply *lex loci* where the result would be

---

1. Defendant does not challenge plaintiff Carol Feldt's claim for loss of consortium; the motion for summary judgment is directed to the first count of the complaint only. Official Transcript of June 20, 1989 Oral Argument (filed June 22, 1989) ("Transcript") at 6–7.

"arbitrary" and "irrational," 201 Conn. at 650, 519 A.2d 13, but did not discard *lex loci* entirely, 201 Conn. at 648, 519 A.2d at 13. *See Katz v. Gladstone*, 673 F.Supp. 76, 79–80 n. 2 (D.Conn.1987); *see also* Brilmayer, *The Choice of Law Revolution in Connecticut*, 62 Conn.B.J. 373 (1988) (urging caution in abandoning *lex loci*).

The "traditional" rules of choice of law have been subjected to much critical analysis in the academy—indeed, several generations of conflicts teachers have enjoyed long and successful careers exposing the imperfections of the original Restatement of Conflict of Laws (1934) and the related work of its reporter, Professor Joseph Henry Beale of the Harvard Law School. *See, e.g.*, J. Beale, A Treatise on the Conflict of Laws (1935). Nevertheless, in jurisdictions free of the impulse to abandon simple and workable rules in favor of experimentation with uncertain, if not ambiguous, doctrines, litigants have had the benefit of a relatively uncomplicated and relatively predictable body of choice of law rules—a set of principles comprehensible and useful to the practicing bar and to trial court judges.

Adherence to the "traditional" approach of the first Restatement has permitted jurisdictions such as Connecticut (at least for now) to avoid the confusion, and the high costs to litigants and to the system of justice, that unavoidably accompanies the elaborate jurisprudence of "modern" approaches to questions of choice of law, including that of the Restatement (Second) of Conflict of Laws (1971). *See, e.g.*, Brilmayer, *Interest Analysis and the Myth of Legislative Intent*, 78 Mich.L.Rev. 392 (1980) ("interest analysis" theory of choice of law has "[left] the body of conflicts law with a remedy every bit as distressing as the disease it was designed to cure."); Dane, *Vested Rights, "Vestedness", and Choice of Law*, 96 Yale L.J. 1191 (1987) (presenting "counter-revolutionary" formulation of vested rights choice of law theory); *id.* at 1205 n. 57 (describing Second Restatement as "theoretical hybrid that has been attacked by all sides").

Connecticut's Supreme Court may now be on the verge of a major doctrinal revolution; it may indeed be ready to follow, however belatedly, those courts that embraced "interest analysis" and related "modern" approaches to choice of law questions. *See* Brilmayer, *supra*, 62 Conn. B.J. at 374 ("It would be unfortunate to buy in to a modern choice of law approach just as the academic criticism is finally catching up to expose its defects.") Of course, if and when Connecticut's highest court firmly and clearly decides on this path, federal courts required to apply Connecticut's law necessarily will march along with state courts down that rocky and uncertain road. Until then, however, we do well to avoid assuming that the Supreme Court of Connecticut is committed to a wholesale revision of choice of law principles, or that it is oblivious to the rediscovery in the academy of the uses of some of the "traditional" learning.

■ In any event, even if it could be said with certainty that Connecticut law already requires the application in these circumstances of the "modern" choice of law principles found in the Restatement (Second) of Conflict of Laws—a proposition I am not ready to adopt in the absence of a clear statement on the subject by Connecticut's highest court—the "contacts" in this case are such that the law of Georgia would apply. *See Resnick v. Sikorsky Aircraft*, 660 F.Supp. 415, 417–18 (D.Conn.1987) (finding most "significant" contacts lie in state that was domicile of plaintiffs' decedents, place where allegedly defective product was maintained, and place of injury). In this case, plaintiffs live in Georgia, the gun in question was kept in Georgia, and the injury occurred in Georgia. The contacts with Georgia in this case are not "merely fortuitous," as they arguably are in aviation accidents, where a few moments of flight may determine whether an accident occurs in one state or another. *See Saloomey v. Jeppesen & Co.*, 707 F.2d 671, 675–76 (2d Cir.1983). Likewise, the application of Georgia law here will not produce an irrational or arbitrary result. *Cf. O'Connor v. O'Connor, supra.* Accordingly, Georgia products liability law is to be applied in this case.

Plaintiffs urge that even if Georgia substantive law applies, the Connecticut statute of limitations is applicable in this case. In cases grounded on diversity jurisdiction the court applies the statute of limitations that the court of the forum state would apply. *See Wells v. Simonds Abrasive Co.,* 345 U.S. 514, 73 S.Ct. 856, 97 L.Ed. 1211 (1953). Under Connecticut law statutes of limitations are considered "procedural," and thus Connecticut's own statutes of limitations usually govern all claims asserted in diversity cases. *See Brown v. Merrow Mach. Co.,* 411 F.Supp. 1162, 1164 (D.Conn.1976) (Blumenfeld, J.), *citing Thomas Iron Co. v. Ensign–Bickford Co.,* 131 Conn. 665, 670, 42 A.2d 145 (1945). However, there is an exception to this rule: "where the right of action did not exist at common law and the foreign statute of limitations is so interwoven with the statute creating the cause of action that forms the basis of action as to become one of the congeries of elements necessary to establish the right, that limitation goes with the cause of action wherever brought." *Thomas Iron Co. v. Ensign–Bickford Co., supra,* 131 Conn. at 669, 42 A.2d 145. *See also Habenicht v. Sturm, Ruger & Co.,* 660 F.Supp. 52, 55 (D.Conn.1986) (Daly, C.J.); *DeFourneaux v. Sturm, Ruger & Co.,* 503 F.Supp. 2, 5 (D.Conn.) (Burns, J.), *aff'd,* 639 F.2d 768 (2d Cir.1980), *cert. denied,* 451 U.S. 908, 101 S.Ct. 1975, 68 L.Ed.2d 295 (1981); *Thomas Iron Co. v. Ensign–Bickford Co., supra,* 131 Conn. at 668–70, 42 A.2d 145. It appears that the Georgia products liability statute, Ga.Code Ann. § 51–1–11 (1982), created a strict liability unknown at common law. *See Wansor v. George Hantscho Co.,* 243 Ga. 91, 252 S.E.2d 623 (1979). In addition, the Georgia products liability statute of repose is "so interwoven with the statute creating the cause of action" that the limitation must be considered substantive. *See Thomas Iron Co. v. Ensign–Bickford Co., supra,* 131 Conn. at 669, 42 A.2d 145. Accordingly, the Georgia statute of repose for products liability actions applies to this case and bars plaintiff's claim.[2]

**2.** Plaintiffs concede that if the substantive law of Georgia applies to this case and if the Georgia

CONCLUSION

1. Defendant's Motion for Summary Judgment (filed Mar. 1, 1989) is GRANTED. Summary Judgment for defendant shall enter as to the first count of the complaint.

2. Plaintiffs' "Motion for Determination of Choice of Law and Cross Motion for Summary Judgment on the First and Second Affirmative Defenses of Defendant Sturm, Ruger & Co., Inc." (filed May 19, 1989) is DENIED AS MOOT in light of the court's ruling on the defendant's Motion for Summary Judgment.

3. Plaintiffs' application for leave to amend the complaint is GRANTED, absent objection and pursuant to Fed.R.Civ.P. 15. Plaintiffs shall file and serve an amended complaint by no later than September 15, 1989.

It is so ordered.

statute of repose applies, plaintiffs' products liability claim is barred. Transcript at 11.