William L. BAXTER, ppa
Andrew T. Baxter

v.

STURM, RUGER & CO., INC.

Civ. No. 5:91–480 (JAC).

United States District Court,
D. Connecticut.

March 30, 1993.

William C. Longa, Duncan M. Schmitt, Zeldes, Needle & Cooper, Bridgeport, CT, for plaintiff.

Robert L. Danaher, Marsh, Day & Calhoun, Southport, CT, for defendant/third party plaintiff Sturm, Ruger & Co.

Joseph A. Aceto, Aceto & Wells, Hamden, CT, for third party defendant William L. Baxter.

## RULING ON PENDING MOTIONS

JOSÉ A. CABRANES, Chief Judge:

Pending before the court are plaintiff's motion for summary judgment (filed May 8, 1992), plaintiff's motion to dismiss the third party complaint (filed May 11, 1992), defendant's motion for summary judgment (filed June 15, 1992), defendant's motion for certification (filed June 15, 1992), and defendant's motion to transfer the case (filed Feb. 19, 1993).

### Background

This case arises out of personal injuries that Andrew T. Baxter sustained when a small caliber, single action revolver accidentally discharged. Defendant/third party plaintiff Sturm, Ruger & Company, Inc., designed and manufactured this revolver. Plaintiff/third party defendant William L. Baxter, as next friend of his minor son Andrew T. Baxter, and Andrew T. Baxter, are both residents of the State of Oregon. Defendant/third party plaintiff, Sturm Ruger & Company, Inc., is a Delaware corporation with corporate offices in Southport, Connecticut.

It is undisputed that the firearm that is the subject of this action was designed and manufactured in Southport, Connecticut and that on April 24, 1968, the gun was shipped to an independent wholesale distributor in Oregon. The gun was purchased at retail in Oregon in 1968 and was given to William Baxter. At all times since then, William

Baxter has been the owner of the gun. The injury to Andrew Baxter occurred in Oregon on or about April 17, 1990.

This action is brought in three counts.[1] The first count sounds in strict products liability, pursuant to Conn.Gen.Stat. § 52–572m, *et seq.* The second count, regarding a revolver retrofit program, sounds in negligence. The third count is brought for punitive damages. Defendant has raised various affirmative defenses, including its first affirmative defense that plaintiff's claim is barred by the Oregon statute of repose, section 30.-905 of the Oregon Revised Statutes ("ORS 30.905").

## Discussion

The question presented by the pending motions is whether Oregon or Connecticut law will be applied in this action grounded on diversity jurisdiction. The question presented in this case is nearly identical to the one presented to this court in *Feldt v. Sturm, Ruger & Co.,* 721 F.Supp. 403 (D.Conn.1989), and the court now adheres to its reasoning in *Feldt.*

## I.

It is settled that, in a case grounded on diversity jurisdiction, a court of the United States must look to the law of the forum state for the rules governing the choice of law. *See Klaxon Co. v. Stentor Mfg. Co.,* 313 U.S. 487, 496–97, 61 S.Ct. 1020, 1021–22, 85 L.Ed. 1477 (1941). Plaintiff in this action argues that the Connecticut Supreme Court has abandoned the doctrine of *lex loci delicti* and has embraced "interest analysis" or the "most significant relationship" approach of the Restatement (Second) of Conflict of Laws (1971) ("Second Restatement"); he suggests, therefore, that this court apply the Second Restatement in re-

solving choice of law questions. However, as this court observed in *Feldt,* "Connecticut has not abandoned the traditional *lex loci delicti* rule for choice of law questions in tort cases, and this court declines to give procrustean treatment to the ruling of the Connecticut Supreme Court in *O'Connor v. O'Connor* 201 Conn. 632, 519 A.2d 13 (1986)," *Feldt,* 721 F.Supp. at 404. *See generally* Lea Brilmayer, *The Choice of Law Revolution in Connecticut,* 62 Conn.B.J. 373 (1988) (urging caution in abandoning *lex loci delicti* rule).

In any event, even if it could be said with certainty that Connecticut law already requires the application in these circumstances of the "modern" choice of law principles found in the Second Restatement, the relevant "contacts" or "interests" or the "most significant relationships" in this case strongly suggest that the law of Oregon should apply. *See Resnick v. Sikorsky Aircraft,* 660 F.Supp. 415, 417–18 (D.Conn.1987). In this case, plaintiff lives in Oregon, the gun in question was kept in Oregon, and the injury occurred in Oregon. The contacts with Oregon in this case are not "wholly fortuitous," as they arguably are in aviation accidents, where a few moments of flight may determine whether an accident occurs in one state or another. *See Saloomey v. Jeppesen & Co.,* 707 F.2d 671, 675–76 (2d Cir. 1983). Likewise, the application of Oregon law here will not produce an irrational or arbitrary result. It is neither irrational nor arbitrary in the circumstances here presented to apply the substantive law of the state where plaintiff resides, where the weapon at issue was sold at retail, where the weapon was obtained by plaintiff, and where the wrong allegedly took place. *See* Second Restatement § 145.[2] Thus, if this court employed either the traditional "territorialist"

---

1. This action was originally assigned in the normal course to my colleague, Judge T.F. Gilroy Daly. This case was transferred to my docket on July 31, 1992.

2. Section 145 states in relevant part,

   Contacts to be taken into account in applying the principles ... to determine the law applicable to an issue include:
   (a) the place where the injury occurred,

(b) the place where the conduct causing the injury occurred,
(c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and
(d) the place where the relationship, if any, between the parties is centered.
These contacts are to be evaluated according to their relative importance with respect to the particular issue.
Restatement (Second) Conflict of Laws § 145.

doctrine of *lex loci delicti*, associated with the first Restatement of Conflict of Laws (1934) and the work of Professor Joseph Henry Beale of the Harvard Law School, *see, e.g.,* Joseph H. Beale, *A Treatise on the Conflict of Laws* (1935), or the "interest analysis" or "most significant relationship" approach associated with the Second Restatement, it is clear that Oregon law would apply.

## II.

■ Having determined that Oregon substantive law controls in this action, the court must next determine whether Oregon's statute of repose, ORS 30.905, is likewise applicable here; that question, in turn, requires the court to determine whether under Connecticut law statutes of repose are "substantive" or "procedural" for purposes of conflict of laws. In cases grounded on diversity jurisdiction, the court generally applies the statute of limitations that the court of the forum state would apply. *See Wells v. Simonds Abrasive Co.*, 345 U.S. 514, 516–18, 73 S.Ct. 856, 857–58, 97 L.Ed. 1211 (1953). Under Connecticut law, statutes of limitations are "procedural," and thus Connecticut's own statute of limitations usually govern all claims asserted in diversity cases. *Thomas Iron Co. v. Ensign–Bickford Co.*, 131 Conn. 665, 42 A.2d 145 (1945); *see also Brown v. Merrow Mach. Co.*, 411 F.Supp. 1162, 1164 (D.Conn.1976) (Blumenfeld, J.). However, there is an exception to this rule—when a right of action did not exist at common law and the statute of limitations is so "interwoven" with the statute, the limitation must be considered "substantive," *see Feldt*, 721 F.Supp. at 406 (citations omitted); in that event, the characterization would suggest application of the statute of limitations of the state whose substantive law is otherwise applicable.

Defendant argues that "statutes of repose," which bar an action a certain number of years after a product is sold, should be regarded as "substantive" for choice of law purposes. *See* Russell J. Weintraub, *Commentary on the Conflict of Laws* 58 (3d ed. 1986). The Court of Appeals for the Fifth Circuit has noted the difference between statutes of repose and statutes of limitations:

In recent years many states have enacted [statutes of repose]. They have been labeled "statutes of repose" in order to distinguish them from ordinary statutes of limitations which usually set much shorter time periods which run from the time the cause of action accrues, rather than from an arbitrary time such as the date of purchase. Because the date of injury is not a factor used in computing the running of the time period, and such statutes typically do not have tolling provisions, the statutes acquire a substantive nature, barring rights of action even before injury has occurred if the injury occurs subsequent to the prescribed time period.

*Wayne v. Tennessee Valley Auth.*, 730 F.2d 392, 401–02 (5th Cir.1984) (citations and footnotes omitted).

ORS 30.905 provides, in relevant part, that, "a product liability civil action shall be commenced not later than eight years after the date on which the product was first purchased for use or consumption." ORS 30.-905. It is undisputed that ORS 30.905 is a "statute of repose." It is also undisputed that the gun in question was first purchased for use in 1968 and that the injury in issue occurred in 1990. If statutes of repose are indeed "substantive" for Connecticut choice of law purposes, the court would apply Oregon's statute, in which case plaintiff's right of action would have been extinguished prior to plaintiff's injury and summary judgment would enter for defendant as to all aspects of his claim. It will be recalled that a statute of repose is unlike the typical statute of limitations in that the time span is not measured from the date of the injury or the time when the cause of action "accrues"—rather, it begins to run on "the date on which the product was first purchased for use or consumption." ORS 30.905. *See generally, Pottratz v. Davis*, 588 F.Supp. 949, 952–53 (D.Md.1984) (applying Oregon statute of repose).

The parties in this action have not directed the court to any cases of the Connecticut Supreme Court or any other Connecticut state courts that have dealt with the characterization of statutes of repose for conflict of law purposes. It has been said that Connecticut's Supreme Court has not dealt di-

rectly with the question of whether statutes of repose are substantive in nature, *see Habenicht v. Sturm, Ruger & Co., Inc.,* 660 F.Supp. 52, 53 (D.Conn.1986); *Mikulis v. Olin Corp.,* Civil No. B–80–546 (TFGD) (D.Conn. Mar. 25, 1983).[3] In the absence of a controlling decision in the state courts, a federal court exercising diversity jurisdiction must try to predict how the state's highest court will act in the future. *Commissioner v. Estate of Bosch,* 387 U.S. 456, 465, 87 S.Ct. 1776, 1782, 18 L.Ed.2d 886 (1967) ("If there be no decision by [the state's highest court] then federal authorities must apply what they find to be the state law after giving 'proper regard' to relevant ruling of other courts of the State."); *see also Magavern v. United States,* 550 F.2d 797, 801 (2d Cir. 1977). Our judgment as to how the Connecticut Supreme Court might resolve this issue is informed by the scholarly judgment that "[t]hese statutes have been characterized as 'substantive' and subjected to choice of law analysis," Russell J. Weintraub, *Commentary on the Conflict of Laws, supra,* by Oregon's interpretation of its own statute, *see Sealey v. Hicks,* 309 Ore. 387, 788 P.2d 435 (1990), and by this court's own decision in *Feldt,* 721 F.Supp. at 406 (applying the Georgia products liability statute, finding that it is "substantive" and barring plaintiff's claim).

■ It seems reasonable to predict that the Connecticut Supreme Court would follow the weight of authority in other jurisdictions in interpreting statutes of repose as "substantive" for conflict of law purposes. In that event, the court can predict with reasonable certainty that the Connecticut Supreme Court would find that in a situation where the substantive law of another jurisdiction applies to a case brought in Connecticut (as in this case), and where the other jurisdiction has determined that the applicable statute of repose is "substantive" rather than "procedural" (as in this case), the "substantive" foreign statute of repose is applicable. *See*

*generally, Walls v. General Motors, Inc.,* 906 F.2d 143, 146 (5th Cir.1990).

It is noteworthy that the courts of Oregon have held that ORS 30.905 is "substantive." *Sealey v. Hicks, supra.* It is also instructive that other courts that have characterized ORS 30.905 have found the statute to be "substantive" for choice of law purposes. *See Walls v. General Motors, Inc., supra* (characterizing Oregon statute as "substantive"); *Pottratz v. Davis,* 588 F.Supp. at 952–53 (same). Accordingly, having determined that Connecticut law would characterize statutes of repose as "substantive," the Oregon statute of repose for products liability actions applies to this case and bars plaintiff's claims.

### Conclusion

Upon a review of the record, including oral argument on February 22, 1993, and for the reasons stated above, defendant's motion for summary judgment (filed June 15, 1993) is hereby GRANTED. Plaintiff's motion for summary judgment (filed May 8, 1992) and plaintiff's motion to dismiss the third party complaint (filed May 11, 1992) are hereby DENIED. Defendant's motion for certification (filed June 15, 1992) and defendant's motion to transfer the case (filed Feb. 19, 1993) are hereby DENIED as moot. Judgment shall enter for defendant.

It is so ordered.

■

---

**3.** In *Mikulis,* the court observed that no case had been brought to its attention that characterized any foreign "statute of repose as substantive for choice of law purposes. Rather, it appears that the Connecticut courts have not yet dealt with this issue." *Mikulis v. Olin Corp.,* Civil No. B–

80–546 (TFGD) (D.Conn. Mar. 25, 1983) slip op. at 5. Although the court concluded that statutes of repose were procedural in nature, *id.* at 6, this opinion was not guided by recent decisions on this topic.