**Sally Ethel POTTRATZ, et al.**

v.

**Hugh J. DAVIS, M.D., et al.**

**Civ. A. No. N 83–163.**

United States District Court,
D. Maryland.

June 1, 1984.

---

Michael A. Pretl, and Pretl & Schultheis, Baltimore, Md., for plaintiffs.

Deborah E. Jennings and Piper & Marbury, Baltimore, Md., for defendant Hugh J. Davis, M.D.

Charles P. Goodell, Jr., Susan T. Preston and Richard M. Barnes of Semmes, Bowen & Semmes, Baltimore, Md., for defendant A.H. Robins Co.

## MEMORANDUM

NORTHROP, Senior District Judge.

Presently pending in this action is a motion for summary judgment filed by defendant, A.H. Robins Company ("Robins"). Defendant Hugh J. Davis, M.D., joins in this motion. The motion is based upon the Oregon statute of limitations and upon the doctrine of *res judicata.*

### FACTS

The basic facts as stated in plaintiffs' complaint are as follows. Defendant Davis invented the Dalkon Shield, an intra-uterine contraceptive device, in 1968. The device was originally marketed by the Dalkon Corporation. Subsequently, all rights to the device were acquired by defendant Robins; Robins began to market the device nationally in January, 1971.

On May 15, 1971, plaintiff, Sally Pottratz, had a Dalkon Shield IUD inserted for the purpose of temporary contraception. Mrs. Pottratz wore the device until February, 1981, at which time she developed severe pelvic inflammatory disease and a tubo-ovarian abscess. As a result, Mrs. Pottratz underwent a total abdominal hysterectomy in May of 1981.

On January 17, 1983, plaintiffs filed this lawsuit against Robins and Davis alleging as theories of recovery negligence, strict liability, fraudulent misrepresentation and conspiracy. Plaintiffs had previously filed a lawsuit alleging essentially the same theories of recovery in the United States District Court for the District of Oregon. On August 26, 1983, summary judgment was granted in favor of defendant Robins by Judge Robert Belloni. The summary judgment was based upon the statute of limitations and relevant case law. In the instant action, Robins and Davis move for summary judgment based upon the Oregon statute of limitations, ORS 30.905, and upon the theory that Judge Belloni's order bars the instant action under the doctrine of *res judicata.*

### DISCUSSION

The issues for present determination are: whether the Oregon statute of limitations is substantive law and, thereby, a part of Oregon law which applies to this action under the Maryland *lex loci delicti* rule; whether Judge Belloni's order granting summary judgment in the Oregon action is a bar under *res judicata* to this action; and whether the Oregon statute violates federal and state equal protection laws.

### I. APPLICABILITY OF ORS 30.905 TO THIS ACTION.

The defendants contend that ORS 30–905 which governs the time limitation for commencement of a product liability action is substantive law which must be applied by this Court under the doctrine of *lex loci delicti.*

The relevant portions of ORS 30.905 provide as follows:

(1) Notwithstanding ORS 12.115 or 12.-140 and except as provided in subsections (2) and (3) of this section, *a product liability civil action shall be commenced not later than eight years after the date on which the product was first purchased for use or consumption.*

(2) Except as provided in subsection (3) of this section [governing asbestos cases], a product liability civil action shall be commenced not later than two years after the date on which the death, injury, or damage complained of occurs.

ORS 30.905 (emphasis supplied).

As plaintiffs point out in their response to the motion for summary judgment, this Court's threshold inquiry should be one of choice of law. This Court is required to apply the choice of law rules of its forum state, Maryland. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Klaxon Co. v. Stentor Electrical Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). In tort actions, Maryland applies the doctrine of *lex loci delicti;* that is, the substantive law of the state where the wrong occurs governs. *Hauch v. Connor*, 295 Md. 120, 453 A.2d 1207 (1983); *President and Directors of Georgetown College v. Madden*, 505 F.Supp. 557 (D.Md.1980), *aff'd in part and appeal dismissed in part*, 660 F.2d 91 (4th Cir.1981). Maryland law, however, governs the applicability of the relevant statute of limitations. *Doughty v. Prettyman*, 219 Md. 83, 88, 148 A.2d 438 (1959); *Mills v. International Harvester Co.*, 554 F.Supp. 611 (D.Md.1982); *see* Restatement (Second) of Conflict of Laws sections 142–43 (1971). Thus, the characterization which a Maryland state court would give ORS 30.905, *i.e.*, substantive or procedural, is binding upon this Court. *President and Directors of Georgetown College, supra* at 571.

■ Under Maryland law, a statute of limitations is generally considered to be procedural. *Doughty v. Prettyman*, 219 Md. at 88, 148 A.2d at 438. "However, when the statute of limitations bars the rights and not merely the remedy, an exception to the general rule applies and the statute of limitations is considered substantive." *President and Directors of Georgetown College, supra* at 571. (Footnote omitted). The statute, if conceived of as a grant of immunity from suit, is also considered to be substantive. *President and*

*Directors of Georgetown College, supra* at 571.

■ Under these general principles, ORS 30.905 must be examined. Upon examination of subsection (1) of the statute, it is clear that it is unlike the typical statute of limitations in that the time span is not measured from the time when the cause of action accrues. That is, the statutory time period does not begin to run on the date of the injury. Rather, it begins to run on "the date on which the product was first purchased for use or consumption." ORS 30.-905(1). Thus, this statute does not operate to bar a remedy; it prevents a cause of action from ever arising. It is similar to the situation in *President and Directors of Georgetown College, supra*, where under Maryland law, a District of Columbia "statute of limitations" was found to be a substantive grant of immunity. In that opinion, Chief Judge Kaufman stated:

[The statute] does not bar a cause of action; its effect, rather, is to prevent what might otherwise be a cause of action, from ever arising. Thus injury occurring more than ten years after the negligent act allegedly responsible for the harm, forms no basis for recovery. The injured party literally has *no* cause of action. The harm that has been done is *damnum absque injuria* —a wrong for which the law affords no redress.

*President and Directors of Georgetown College, supra* at 573.

In that case, the statute involved damages occurring after the completion of improvement to realty. The D.C. statute provided that the injury must occur within the "ten-year period beginning on the date the improvement was substantially completed." (Oct. 27, 1972, Pub.L. 92–579, section 1(a), 86 Stat. 1275). Similarly, the Oregon statute construed herein provides that the action must be brought "not later than eight years after the date on which the product was first purchased for use or consumption." Neither statute begins to run on the date of the injury or when the cause of action accrues. But, both provisions are contained in broader statutes which create

and define the underlying elements and characteristics of the statute. These relevant aspects of the Oregon code are identical in nature to the D.C. statute which has been found under Maryland law to be substantive. Thus, it would seem true that a Maryland court construing this statute would find it to be substantive.

In addition, however, in construing another state's law, the Maryland courts would find it instructive to look at *that* state's decisions on the matter. Oregon courts have held that ORS 30.905 is a statute of repose which bars the right, not merely the remedy. Specifically, in *Dortch v. A.H. Robins Co., Inc.*, 650 P.2d 1046 (1982), the Court of Appeals of Oregon stated:

> It is clear from the discussions of House Bill 3039, which became ORS 30.905, what the legislative objective was. The legislature wanted to enact a *ten-year period of ultimate repose for product liability actions* ... if an injury occurred within eight years of the date the product was first purchased, the injured party had an additional two-year period following the injury to bring the action.

*Id.* at 1049–50 (emphasis supplied), *citing*, *Baird v. Electro Mart*, 47 Or.App. 565, 570, 615 P.2d 335 (1980).

Not only has ORS 30.905 been characterized as a substantive statute of repose by Oregon courts, but Oregon courts have also stated and approved of the *policies* behind such statutes of repose. Those policies are: first, that there is a lack of reliability and availability of evidence after a lapse of a long period of time and secondly, that people are entitled to plan their affairs with certainty, free from the disruptive burden of protracted and unknown potential liability. *Johnson v. Star Machinery Co.*, 270 Or. 694, 530 P.2d 53 (1974). The *Johnson* court further held that the aforementioned policy considerations are obviously applicable without regard to whether or not undetected damage had occurred at the time of the original act by the defendant.

It cannot be said by this Court that Maryland courts would not at least recognize these policies as forming the basis for the law of another state. Plaintiffs argue, however, that finding the Oregon statute to be substantive and consequently applying it in this action would be contrary to the policies of Maryland. This Court disagrees. It is not the policy of the State of Maryland to act as a forum of last resort for lawsuits which are barred in other jurisdictions. Maryland may have a liberal statute of limitations which is generously applied in favor of plaintiffs. Nevertheless, this is not to say that Maryland courts would, as a result, misconstrue the law of another state or would harbor lawsuits which are time-barred in other jurisdictions. To the contrary, Maryland courts would be respectful of the law of Oregon and would apply it accordingly in this action.

In sum, based upon Maryland authorities, the language and legislative history of ORS 30.905, and the relevant Oregon cases, this Court finds that the Oregon statute is an ultimate statute of repose which is part of the substantive law of Oregon. The substantive law of Oregon applies to this action because the injury occurred in that state. Defendant Robins' Exhibit 5 to motion for summary judgment, plaintiff's answer to interrogatory No. 4. Under ORS 30.905, this action is barred because plaintiff, Mrs. Pottratz, admits that she did not learn of a causal connection between her injuries and the Dalkon Shield until April, 1981, nine years and eleven months after its purchase. Thus, the injury did not occur within eight years of the date of purchase of the product. As did Judge Belloni, this Court finds that the action is barred by ORS 30.905 as construed in *Dortch v. A.H. Robins Co.*, 59 Or.App. 310, 650 P.2d 1046 (1982) and *Philpott v. A.H. Robins Co., Inc.*, 710 F.2d 1422 (9th Cir.1983). Furthermore, all of plaintiffs' claims under each theory are barred by ORS 30.905 since that statute applies to *all* product-related claims. *Philpott, supra* at 1425.

One further issue raised by the plaintiffs is whether this Court is bound to rule that the cause of action arose in Virginia be-

cause of the Court's November 16, 1983 ruling that, for venue purposes, the "claims arose" in Virginia. *In re: Dalkon Shield Litigation*, 581 F.Supp. 135, 139 (D.Md. 1983). It will simply be noted that despite any finding for purposes of federal venue, this Court is bound to follow Maryland conflicts rules which provide that the law of the *place of the injury* controls. *Hauch v. Connor, supra.* Here, there is little doubt that the injury to Mrs. Pottratz occurred in Oregon because that is where the Dalkon Shield was inserted and used by the plaintiff.

## II. RES JUDICATA EFFECT OF JUDGE BELLONI'S ORDER IN THE OREGON CASE

[3] Plaintiffs raise the argument that defendants fraudulently induced them not to file this action until it was too late. Thus, plaintiffs argue, defendants should be equitably estopped from raising a statute of limitations defense. Defendants contend that this argument fails because the Oregon case bars litigation of any issues in this action under the doctrine of *res judicata.* Plaintiffs, on the other hand, contend that *res judicata* effect should not be given to Judge Belloni's order.

A summary judgment dismissal *is* a final adjudication on the merits under Fourth Circuit cases and under the Maryland authorities. In *Adkins v. Allstate*, 729 F.2d 974 (4th Cir.1984), an action for reformation of an insurance contract was brought in the United States District Court for the District of Georgia. That court granted summary judgment; subsequently, plaintiff filed an action in the United States District Court for the District of South Carolina. The United States Court of Appeals for the Fourth Circuit affirmed the lower court's finding that the Georgia dismissal was *res judicata* and barred the South Carolina action. The Fourth Circuit stated:

> [P]laintiff seems to suggest that the Georgia adjudication may not be given *res judicata* effect because her claim was rejected on summary judgment. It

does not surprise us that she fails to cite any legal authority whatsoever to support this strange contention. For purposes of *res judicata,* a summary judgment has always been considered a final disposition on the merits.

*Adkins v. Allstate Ins. Co.*, 729 F.2d 974, 976, n. 3 (4th Cir.1984) (citations omitted).

In Maryland, the Court of Appeals has held that Maryland state courts must give *res judicata* effect to a dismissal by a court of another state, where such dismissal would be conclusive and a bar to any subsequent relitigation in the other state. *Weinberg v. Johns-Manville Sales Corp.*, 299 Md. 225, 473 A.2d 22, 1984.

Under Fourth Circuit authorities as well as the Maryland case law, plaintiffs' case is barred by *res judicata* as a result of the final disposition on the merits which arose from Judge Belloni's dismissal on summary judgment of the Oregon action. *Goins v. Bethlehem Steel*, 657 F.2d 62 (4th Cir. 1981); *Parish v. Md. & Va. Milk Producers Ass'n., Inc.*, 437 F.Supp. 623, 626 (D.Md.1977). This *res judicata* bar precludes plaintiffs from having a second chance at raising the equitable estoppel argument.

## III. EQUAL PROTECTION

Plaintiffs further argue that recent amendments to the Oregon statute create arbitrary distinctions between asbestos plaintiffs and Dalkon Shield plaintiffs. ORS 30.905(3) (1983). These amendments, according to plaintiffs, violate federal and state equal protection provisions. Defendants' initial rejoinder to this argument is that this issue is also barred under *res judicata* by the final judgment entered by Judge Belloni. Plaintiffs are correct in pointing out that the better phrases are "claim preclusion" (*res judicata*) and "issue preclusion" (collateral estoppel). This Court will simply note that plaintiffs' constitutional arguments are not precluded under either doctrine because the issue was not and could not have been raised in the prior lawsuit. Specifically, the asbestos-exception amendment was filed in the Office

of the Secretary of State of Oregon on May 23, 1983, and became effective on October 15, 1983. The exception is applicable to all claims "tried after October 15, 1983." ORS 30.905(4). The Pottratz action had been filed and dismissed from the United States District Court for the District of Oregon by August 31, 1983. Therefore, the amendment did not apply to the Pottratz action and plaintiffs could not have raised the equal protection arguments therein.

■ Turning to the merits of plaintiffs' equal protection argument, it is plaintiffs' position that asbestos plaintiffs and Dalkon Shield plaintiffs are treated differently under the statute of repose and this different treatment does not rationally further legitimate legislative objectives. It shall first be noted that, in general, the same analysis may be used in applying the Oregon equal protection doctrine found in Article I, Section 20 of the Oregon Constitution as is used in applying the federal equal protection provision stated in the Fourteenth Amendment to the United States Constitution. *City of Klamath Falls v. Winters*, 289 Or. 757, 774–75, 619 P.2d 217, 227 (1980).

■ Under both constitutions, the level of scrutiny to be used in this matter focuses on whether the disparate treatment rationally furthers legitimate objectives of state law. *San Antonio School District v. Rodriquez*, 411 U.S. 1, 17, 93 S.Ct. 1278, 1288, 36 L.Ed.2d 16 (1973); *City of Klamath Falls v. Winters, supra*, 289 Or. at 772, 619 P.2d 217. This is because no fundamental right and no suspect class is involved in this instance. Therefore, the issue for present determination is whether the different treatment of asbestos victims and Dalkon Shield victims is rationally related to legitimate state objectives. *Rodriquez, supra.*

A similar issue was recently addressed by the United States Court of Appeals for the Fifth Circuit in *Wayne v. Tennessee Valley Authority*, 730 F.2d 392 (5th Cir. 1984). The statute being scrutinized in that case was the statute of limitations set

out in Tennessee's Products Liability Act of 1978, Tenn.Code Ann. section 29–28–101 et seq. (1980). The Tennessee statute allowed claimants alleging asbestos-related injuries a longer time to bring an action than other product claimants. The claimants in the *Wayne* case were individuals alleging phosphate slag-related injuries who argued, like the instant Dalkon Shield plaintiffs, that they were arbitrarily and irrationally being treated differently from asbestos claimants. The Fifth Circuit held that the Tennessee statute was constitutional because there were legitimate justifications for distinguishing between asbestos claimants and phosphate-slag claimants. In so doing, the Fifth Circuit relied on language from *Hargraves v. Brackett Stripping Machine Co.*, 317 F.Supp. 676, 683 (E.D.Tenn.1970), which stated:

A statute of limitations must be judged in the light of the broad class of cases to which it applies and if it is reasonable with respect to the class, it will not be judged unreasonable merely because it is deemed to operate harshly in a particular or exceptional instance. In reaching this conclusion it should be emphasized that the role of the Court is not to pass upon the wisdom or lack of wisdom of the legislation involved. The courts do not sit to review the wisdom of legislation or regulation by public bodies, for these matters address themselves solely to the legislative or regulating body.

*Wayne, supra* at 404.

■■ The Constitution does not prohibit the abolition or alteration of common law rights to attain permissible legislative objectives. *Silver v. Silver*, 280 U.S. 117, 122, 50 S.Ct. 57, 58, 74 L.Ed. 221 (1929); *Carr v. United States*, 422 F.2d 1007 (4th Cir.1970). The reasonableness of statutes of limitations as specially applied to asbestosis claims has been repeatedly recognized. *See, e.g., Wayne v. Tennessee Valley Authority*, 730 F.2d 392 (5th Cir.1984); *Braswell v. Flintkote Mines, Ltd.*, 723 F.2d 527 (7th Cir.1984); *Bunker v. National Gypsum Co.*, 441 N.E.2d 8 (Ind.1982). The legislature is entitled to much defer-

**956**

ence in this matter, and the statute should be presumed to be constitutional. It will simply be noted that among the many factors which place asbestos-related injuries in a class by themselves, it is known that asbestos-related diseases are not dependent upon repeated inhalations or exposures, but upon the presence of the fiber in the lungs from potentially one, initial exposure. Mansfield, *Asbestos: The Cases and the Insurance Problem,* 15 The Forum (ABA) 860, 861 (1980). There is usually a long period of latency of up to more than 30 years before onset of·the diseases. *Borel v. Fibre-board Paper Products Corp.,* 493 F.2d 1076, 1083–85 (5th Cir.1973), *cert. denied,* 419 U.S. 869, 95 S.Ct. 127, 42 L.Ed.2d 107 (1974). Over 3000 different products in daily use at one time contained asbestos, including tooth brushes, ironing board covers, brake linings, roofing shingles, fireproofing and insulating material. Mansfield, *Asbestos Cases, supra.* With these few factors in mind, it can hardly be said that there is no rational justification for the Oregon legislature's decision to treat asbestos claimants differently from than other claimants, including Dalkon Shield claimants. Therefore, this Court finds that the Oregon statute of limitations, ORS 30.905, does not violate the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution nor does it violate the equal protection doctrine embodied in Article I, Section 20 of the Oregon Constitution. The statute is rationally related to legitimate state objectives, including to facilitate the expeditious and fair handling of widespread asbestos litigation.

Plaintiffs' losses are recognized and regretted by this Court. This Court further recognizes that other Dalkon Shield plaintiffs will be able to maintain actions in this Court, yet the instant plaintiffs will not. However, it is simply an unfortunate by-product of our federal-state system and the *Erie* doctrine that victims of common disasters and users of the same or similar products may be treated differently because of varying state laws.

For the foregoing reasons, summary judgment will be granted in favor of the defendants in a separate order.