851 F.Supp. 712 (1994)
Susan SHADBURNE
v.
DALKON SHIELD CLAIMANTS TRUST.
No. K-83-160.
United States District Court, D. Maryland.
May 19, 1994.
Michael A. Pretl and H. Robert Erwin, Pretl & Erwin, P.A., Baltimore, MD, for plaintiff.
Paul F. Strain, Elizabeth C. Honeywell and Di S. Sangiamo, Venable, Baetjer & Howard, Baltimore, MD, for defendant.
FRANK A. KAUFMAN, Senior District Judge.
On March 1, 1974, plaintiff, Susan Shadburne, received a Dalkon Shield intrauterine contraceptive which was manufactured and sold by A.H. Robins, Inc. She filed suit in this Court on January 20, 1983, alleging that she had been injured by the use of the Dalkon Shield. At that latter date, the Oregon statute of repose, ORS 30.905, provided that "a product liability civil action shall be commenced not later than eight years after the date on which the product was first purchased for use or consumption." On December 20, 1984, this Court granted Robins' motion for summary judgment with regard to Shadburne, holding that because plaintiff did not file suit within eight years of receiving her Dalkon Shield, her suit was barred under the Oregon statute of repose. In re Dalkon Shield Cases, 599 F.Supp. 1351, 1356-57 (D.Md.1984). The decision of Judge Northrop in those Dalkon Shield Cases was largely based on his earlier opinion in Pottratz v. Davis, 588 F.Supp. 949, 953 (D.Md. 1984), in which he held that "the Oregon statute is an ultimate statute of repose which is part of the substantive law of Oregon." Because Maryland applies the substantive law of the state in which a wrong occurs, and because the Oregon statute of repose is substantive, the court in Pottratz determined that under this Court's choice-of-law principles, the Oregon statute of repose governed a Dalkon Shield claim which arose in Oregon.
Shadburne, along with several other plaintiffs, appealed Judge Northrop's ruling in Dalkon Shield Cases to the United States Court of Appeals for the Fourth Circuit. On August 21, 1985, while that case was on appeal in that Court, Robins filed a petition for bankruptcy in the United States District Court for the Eastern District of Virginia, thus staying all of the Dalkon Shield litigation. During the continued pendency of Ms. *713 Shadburne's appeal, Oregon enacted a statute providing that the Oregon State of Repose "shall not apply to a product liability civil action against a manufacturer of an intrauterine device, resulting in IUD-related injuries." Or.Laws 1989, c. 642, § 2 ("Special IUD Statute"). Instead, the statute provided that a plaintiff must file suit against an IUD manufacturer "not later than two years after the date on which the plaintiff discovered, or, in the exercise of reasonable care, should have discovered" her injury. § 3. The Act further provided that it applied to "any product liability civil action against a manufacturer of an intrauterine device currently pending in the trial court or on appeal, in which the defendant manufacturer has raised the statute of limitations or repose as a defense." § 4.[1]
In reliance upon the enactment of the Special IUD Statute, several Oregon claimants commenced an adversary proceeding against Robins in the aforementioned Bankruptcy Court. As stated in a Consent Order submitted to that Bankruptcy Court, the claimants were concerned that "any rights afforded them by the Oregon Special IUD Statute ... not be lost due to the pendency of the automatic stay." On May 5, 1989, the said Bankruptcy Court signed the aforementioned Consent Order which provided: "The periods set forth in the Oregon Special IUD Statute for filing suit against Robins or the Trust on Dalkon Shield-related personal injury claims, if legal and applicable, are tolled until thirty days after expiration or termination of the automatic stay." The Order also stated:
"The Court expressly reserves judgment on any and all other issues arising from the referenced Oregon statutes or which are and could have been raised in this adversary proceeding including, without limitation, issues relating to the constitutionality, validity, or enforceability of the Oregon Special IUD Statute or its retroactive effect...."
On December 13, 1989, this Court entered an order administratively closing all Dalkon Shield claims then pending, subject to a claimant's motion for reinstatement. Defendant emerged from bankruptcy on December 15, 1989.[2] On October 23, 1991, the Fourth Circuit dismissed the Oregon claimants' appeal to which Shadburne had been a party because one of the co-appellants had settled her claim. Ms. Shadburne completed the Claims Resolution process without settling, and on October 21, 1992, the Bankruptcy Court certified plaintiff to proceed with litigation in this case. This Court granted plaintiff's motion to reinstate this case on October 30, 1992.
The Trust filed a motion for judgment on the pleadings on June 25, 1992, challenging the constitutionality of the Special IUD statute under the federal and Oregon constitutions. At a motions hearing held in chambers on December 15, 1993, this Court raised the question of whether it lacked jurisdiction over this case in the light of the Fourth Circuit's dismissal of the Oregon claimants' *714 appeal. In a Memorandum and Order dated December 27, 1993, this Court stayed all proceedings in this case until counsel advised this Court concerning future presentation of that issue to the Fourth Circuit. On February 25, 1994, the Fourth Circuit determined that Ms. Shadburne's appeal had been dismissed in error, recalled its mandate, and remanded this case back to this Court, insofar as it relates to Ms. Shadburne. Accordingly, this Court must now decide defendant's motion for judgment on the pleadings, in connection with the issue of whether the Oregon Special IUD Statute, which expressly applies retroactively to revive claims extinguished by the prior Oregon Statute of Repose, is constitutional under the federal Constitution.[3]

LAW
Although the constitutional impediments to expressly retroactive legislation are "of limited scope," such legislation will not pass constitutional muster if it runs afoul of the Fourteenth Amendment by depriving a person of life, liberty, or property without due process of law. See Landgraf v. USI Film Products, ___ U.S. ___, ___, 114 S.Ct. 1483, 1497-99, 128 L.Ed.2d 229 (1994). It is undisputed that a legislature may in certain instances retroactively enlarge a statute of limitations without violating the Constitution. International Union of Electrical, etc. v. Robbins & Myers, Inc., 429 U.S. 229, 243, 97 S.Ct. 441, 450, 50 L.Ed.2d 427 (1976); Chase Sec. Corp. v. Donaldson, 325 U.S. 304, 311-12, 65 S.Ct. 1137, 1140-41, 89 L.Ed. 1628 (1945); Campbell v. Holt, 115 U.S. 620, 6 S.Ct. 209, 29 L.Ed. 483 (1885).[4] Retroactive enlargement in such a situation is unproblematic because "statutes of limitation go to matters of remedy, not to destruction of fundamental rights." Chase, 325 U.S. at 314, 65 S.Ct. at 1142. However, "where a statute in creating a liability also put[s] a period to its existence, a retroactive extension of the period after its expiration amount[s] to a taking of property without due process of law." Id., at 311 n. 8, 65 S.Ct. at 1141 n. 8 (citing William Danzer & Co. v. Gulf & Ship Island R.R. Co., 268 U.S. 633, 636-37, 45 S.Ct. 612, 613, 69 L.Ed. 1126 (1925)). In Danzer, the Supreme Court refused to permit a plaintiff who failed to file timely under a two-year federal limitations period to take advantage of a later statute permitting suspension of the timeliness requirement in certain circumstances. The original statute had been previously determined, in other cases, to constitute not only a bar to a remedy, but also a destruction of defendant's liability to plaintiff. 268 U.S. at 636, 45 S.Ct. at 613. Therefore, upon expiration of the two-year period for filing, "it was as if liability had never existed." Id. Thus, by virtue of Chase and Danzer, the Supreme Court has distinguished between retroactive enlargement of statutes which effect only remedy and those which effect liability, upholding the former while refusing to uphold the latter.
As both parties agree, the statute which has been retroactively enlarged in this case, ORS 30.905, is a statute of repose. Unlike a statute of limitations which generally runs from the time a cause of action accrues, the statute of repose in this case runs from the date the product was first purchased. As Judge Northrop explained in Pottratz, "this statute does not operate to bar a remedy; it prevents a cause of action from ever arising." 588 F.Supp. at 952. In *715 other words, injury which occurs more than eight years after the product is purchased, "`forms no basis for recovery. The injured party literally has no cause of action.'" Id. (quoting President and Directors of Georgetown College v. Madden, 505 F.Supp. 557, 573 (D.Md.1980), aff'd in part and appeal dismissed in part, 660 F.2d 91 (4th Cir. 1981)). The policies identified by Judge Northrop which underlay a statute of repose are "first, that there is a lack of reliability and availability of evidence after a lapse of a long period time and secondly, that people are entitled to plan their affairs with certainty, free from the disruptive burden of protracted and unknown potential liability." Id. at 953 (citing Johnson v. Star Machinery Co., 270 Or. 694, 530 P.2d 53 (1974)).
The Fourth Circuit has explained the differences between statutes of limitation, which are procedural, and statutes of repose, which are substantive.
"Statutes of limitation ... are primarily instruments of public policy and of court management, and do not confer upon defendants any right to be free from liability, although this may be their effect.
In contrast to statutes of limitation, statutes of repose serve primarily to relieve potential defendants from anxiety over liability for acts committed long ago. Statutes of repose make the filing of suit within a specified time a substantive part of plaintiff's cause of action.... In other words, where a statute of repose has been enacted, the time for filing suit is engrafted onto a substantive right created by law. The distinction between statutes of limitation and statutes of repose corresponds to the distinction between procedural and substantive laws. Statutes of repose are meant to be `a substantive definition of rights as distinguished from a procedural limitation on the remedy used to enforce rights.'"
Goad v. Celotex Corp., 831 F.2d 508, 511 (4th Cir.1987) (footnotes omitted) (emphasis added) (citing Bolick v. American Barmag Corp., 306 N.C. 364, 293 S.E.2d 415, 418 (1982)), cert. denied, 487 U.S. 1218, 108 S.Ct. 2871, 101 L.Ed.2d 906 (1988).
Danzer has never been overruled by the Supreme Court; rather, later cases such as Chase and Robbins & Myers are testament to its continued vitality, since the opinions in those cases expressly distinguish themselves from the substantive impairment found in Danzer. Nonetheless, plaintiff argues that Danzer is no longer valid law and that the substance/procedure distinction drawn in that case is equally untenable. Plaintiff relies largely on Wesley Theological Seminary of United Methodist Church v. United States Gypsum Co., 876 F.2d 119 (D.C.Cir.1989), cert. denied, 494 U.S. 1003, 110 S.Ct. 1296, 108 L.Ed.2d 473 (1990).[5] In that case, Wesley sued Gypsum for providing Wesley with building tiles which contained asbestos. In defense, Gypsum asserted that Wesley's claim was time-barred because the injury alleged did not occur within ten years after the defective improvement to the property, as required under the District of Columbia's statute of repose. However, while the case was pending, an amendment to the time-bar statute provided that the statute was inapplicable to manufacturers such as Gypsum. Relying on the earlier time-bar statute, the district court granted partial summary judgment for Gypsum, reasoning that the statute of repose conferred upon Gypsum a substantive right not to be sued. The Court of Appeals reversed.
The D.C. Circuit rejected the defendant's argument that "changes in purely procedural provisions may be retroactive while changes in substantive ones may not." 876 F.2d at 121. The Court relied heavily on Usery v. Turner Elkhorn Mining Co., 428 U.S. 1, 96 S.Ct. 2882, 49 L.Ed.2d 752 (1976) and Pension Benefit Guaranty Corp. v. R.A. Gray & Co., 467 U.S. 717, 104 S.Ct. 2709, 81 L.Ed.2d 601 (1984), two Supreme Court cases which did not accept due process challenges to expressly retroactive statutes. Under those cases, retroactive economic legislation need *716 only be justified by "a rational legislative purpose" to survive constitutional review. Pension Benefit, 467 U.S. at 730, 104 S.Ct. at 2718. According to the Court in Wesley, the import of Usery and Pension Benefit is that "any substance/procedure dichotomy suggested by Chase is either completely defunct or, at the very most, establishes procedural rules as a safe harbor within which a legislature may freely make retroactive changes." 876 F.2d at 122. The Court in Wesley acknowledged that "there are real distinctions between a statute of limitation and one of repose," but that "we need not tarry with these theoretical points. Even if they proved that statutes of repose were substantive it would not advance our resolution of the constitutional claim." Id. at 122-23.
Unlike the D.C. Circuit, however, the Fourth Circuit has not so rejected the distinction between substance and procedure. As the Goad case demonstrates, see supra, the Fourth Circuit views the differences between statutes of limitation and statutes of repose as corresponding "to the distinction between procedural and substantive laws." 831 F.2d at 511. Further, in the Fourth Circuit, the differences between those two types of timeliness statutes are not viewed as "metaphysical." Wesley, 876 F.2d at 122. Rather, the Court in Goad stated that,
"this distinction does not exalt form over substance, nor does it subject the Constitution to the whims of the States in labeling their laws.... [T]he labels serve a useful purpose in describing the various interests underlying the two types of laws. `The abstract logic of the distinction between substantive rights and remedial or procedural rights may not be clear-cut, but it has been found a workable concept to point up the real and valid difference between rules in which stability is of prime importance and those in which flexibility is a more important value.'"
Id. (quoting Chase, 325 U.S. at 314, 65 S.Ct. at 1142).
Additionally, as defendant notes, the opinion in Wesley does not specifically mention the Supreme Court's decision in Danzer. In contrast to the D.C. Circuit, the Fourth Circuit has continued to adhere to the line initially drawn in Danzer and later upheld in Chase. In Link v. Receivers of Seaboard Air Line Ry. Co., 73 F.2d 149, 152 (4th Cir.1934), Judge Parker, partly in reliance on Danzer, stated that "where a right of recovery has been lost by reason of failure to institute action within the period limited as a condition of the right, it is not revived by a statute subsequently enacted extending the period." Id. at 152. Such a situation differs from a "repeal of a mere statute of limitations affecting the remedy." Id.
In its most recent statement concerning this issue, the Fourth Circuit again affirmed the principle stated in Danzer. In Dinh v. Rust International Corp., 974 F.2d 500 (4th Cir.1992), plaintiff was injured in an industrial accident in 1989 by a machine which had been installed in 1959. Virginia's statute of repose, enacted in 1964, provided that any action against a person responsible for an improvement to real property must be brought within five years after the allegedly defective improvement had been made. Later amendments to that statute provided that the statute's five-year limitation did not apply to manufacturers of machinery such as defendants. The district court granted summary judgment to defendants, reasoning that the 1964 statute of repose applied to the machinery and that therefore defendants "obtained vested rights of repose prior to enactment of the" amendments. Id. at 501. Although on appeal plaintiff did "not argue for a retroactive application" of the amendments, the Fourth Circuit affirmed the district court's conclusion in that regard, stating that "the statute of repose creates substantive rights in potential defendants, which, once vested, may not be legislatively destroyed." Id. (citing School Bd. of City of Norfolk v. U.S. Gypsum Co., 234 Va. 32, 360 S.E.2d 325 (1987)).[6] Thus, the Fourth Circuit appears to follow the substance/procedure *717 distinction drawn by the Supreme Court to a considerably greater degree than the D.C. Circuit; this Court cannot and does not apply Wesley's approach.[7]
Moreover, even if this Court were otherwise to consider the import of Wesley without regard to the Fourth Circuit's caselaw, it would appear that the Supreme Court cases relied upon by the Court in Wesley do not bear directly on the narrow issue at hand. In Usery, the Supreme Court approved retroactive application of a congressional statute which imposed a new liability upon coal mine operators for the death or illness of miners caused by coal dust, including those miners whose work terminated before passage of the act. In Pension Benefit, the Supreme Court approved retroactive application of an act which amended parts of ERISA by placing retroactive liability upon employers who withdrew from multi-employer pension plans. The statutes at issue in Usery and Pension Benefits established complex regulatory schemes "in the field of national economic policy." Pension Benefits, 467 U.S. at 729, 104 S.Ct. at 2717. In contrast, the Oregon Special IUD Statute relates principally to the timeliness aspect of state common law rights and duties which exist solely with regard to private parties. Thus, it would appear that the decisions in Danzer, Chase, and Robbins & Myers deal more closely with the issue involved in this case. Accordingly, this Court relies upon Danzer, Chase, and Robbins & Myers without giving the effect suggested by Wesley to the broader statements contained in Usery and Pension Benefit  statements which themselves appear to pertain to different sorts of statutory schemes than those at issue in the within case.
Accordingly, in the light of Supreme Court caselaw and the Fourth Circuit statements on this issue, this Court holds that the Oregon Special IUD statute is unconstitutional. Under the Oregon Statute of Repose, Ms. Shadburne's claim is untimely and thus, defendant's motion for judgment on the pleadings will be granted in a separate Order of even date herewith.
NOTES
[1] In 1987, the Oregon legislature exempted IUD cases from the statute of repose and provided in part that:

"Notwithstanding ORS 30.905, a product liability civil action against the manufacturer of an intrauterine contraceptive device shall be commenced not later than two years after the date on which the plaintiff first discovered, or in the exercise of reasonable care should have discovered, the injury and the cause of the injury."
Or.Laws 1987 c. 4 § 5. The Act prescribed an outside date of July 1, 1989, for filing such actions, and also provided that actions which had been dismissed under ORS 30.905 could be refiled within one year of the effective date of the 1987 Act. §§ 7, 8. Further, actions against IUD manufacturers for IUD's purchased more than eight years before the effective date of the 1987 Act which had never been commenced could be filed within one year from the Act's effective date. § 9. According to plaintiff, because the Robins bankruptcy had not been resolved by the July 1, 1989 cutoff date, the Oregon legislature enacted the 1989 legislation.
[2] Under the post-bankruptcy plan of reorganization, a Dalkon Shield Claimants Trust was created in which $2.3 billion was deposited for resolution of Dalkon Shield claims. In addition, a Claims Resolution Facility was established pursuant to which the Trust attempted to settle claims with individual claimants. Upon exhaustion of the Claims Resolution procedures, if a settlement agreement is not reached with an individual claimant, the Trust asks the Bankruptcy Court to certify that the claimant has completed the claims resolution process and may thereafter pursue litigation.
[3] In their Supplemental Memorandum, defendant states that if this Court desires to certify to the Oregon Supreme Court the question of the constitutionality of the Oregon statute under the Oregon constitution, defendant would like to drop its state constitutional challenge. Accordingly, in a Memorandum to Counsel dated May 4, 1994, this Court stated that it understood, for purposes of this case, that defendant is conceding the constitutionality of the Oregon statute under the Oregon constitution. Thus, the constitutionality of the statute under the Oregon constitution is not challenged in connection with defendants' pending motion.
[4] "The Fourteenth Amendment does not make an act of state legislation void merely because it has some retrospective operation. What it does forbid is taking of life, liberty or property without due process of law.... Assuming that statutes of limitation, like other types of legislation, could be so manipulated that their retroactive effects would offend the Constitution, certainly it cannot be said that lifting the bar of a statute of limitation so as to restore a remedy lost through mere lapse of time is per se an offense against the Fourteenth Amendment."

Chase, 325 U.S. at 315-16, 65 S.Ct. at 1143.
[5] Plaintiff also relies on Independent School Dist. No. 197 v. W.R. Grace & Co., 752 F.Supp. 286 (D.Minn.1990), which cites to and relies largely upon the D.C. Circuit's opinion in Wesley. Thus, while the following discussion addresses the opinion in Wesley, it is also applicable to W.R. Grace.
[6] The plaintiff contended on appeal that the 1964 statute did not apply to the improvements completed prior to the enactment of that statute. The Fourth Circuit rejected that argument.
[7] See also Davis v. Valley Distrib. Co., 522 F.2d 827, 830 n. 7 (9th Cir.1975), cert. denied, 429 U.S. 1090, 97 S.Ct. 1099, 51 L.Ed.2d 535 (1977) (explaining difference between Danzer and Chase); Starks v. S.E. Rykoff & Co., 673 F.2d 1106, 1109 (9th Cir.1982) (same).